FILED
SUPERIOR COURT
OF GUAM

2020 NOV 17 AM 4: 08

BY_____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| GUAM HOUSING CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>ALLSTAR, INC.,<br><br>Defendant. | Superior Court Case No. <u>CV0461-20</u><br><br><br>**DECISION AND ORDER<br>RE: DEFENDANT'S MOTION TO<br>DISMISS** |

The Court here considers Defendant Allstar, Inc.'s Motion to Dismiss, or alternatively, Motion for Summary Judgment. After considering the moving papers, relevant law, and the parties' arguments, the Court GRANTS the Motion in part and DENIES in part.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Guam Housing Corporation ("GHC") is an agency of the government of Guam. Compl. ¶ 2 (July 8, 2020). Acting in the ordinary course of business, it purchased software from Allstar after a bidding process. Compl. ¶¶ 4, 5, 8, Ex. C. Allstar proposed to provide a database web application software program (hereinafter "Program") which would allow GHC to automate its housing rental operations. *See* Compl. ¶ 9.

GHC awarded Allstar the contract for $13,791.00. Compl. ¶¶ 6-8. GHC alleges that it sent a purchase order to Allstar on April 25, 2017, creating an agreement that Allstar would provide "full support, training, and implementation for 1 year," of the Program. Compl., Ex. C. GHC claims that it was unable to effectively utilize the Program after its installation on or about May 9, 2017. Compl. ¶ 11. In March 2018, GHC approached Allstar about the performance issues, but Allstar did not resolve GHC's concerns. Compl. ¶ 12.

ORIGINAL

GHC has provided further information on efforts to remedy the Program's deficiencies. That evidence indicates that from 2018 to 2019, Allstar and GHC entered into a series of discussions over proposed modifications of the training and utilization of the Program. *See* Decl. Cynthia V. Ecube, Ex. C (Aug. 27, 2020). In December 2019, Allstar submitted a proposal for supplemental training and customization at $9,360.00 in addition to the initial purchase order price. Decl. Cynthia V. Ecube, Ex. D. On January 27, 2020, GHC rejected Allstar's modified proposal and demanded that Allstar remit full payment of the small purchase contract allegedly entered into on April 25, 2017. *See* Decl. Cynthia V. Ecube ¶ 7.

Because Allstar did not remit, on July 8, 2020, GHC filed this suit against Allstar for breach of contract, breach of express warranty, breach of implied warranty fit for a particular purpose, "Money Had and Spent (Unjust Enrichment)", and for damages to include attorney's fees. Allstar moved to dismiss, or alternatively, for summary judgment. Allstar argues that no valid contract existed because there was no writing signed by the party to be charged as required by the Statute of Frauds. Further, Allstar argues that under 5 GCA §§ 22601 and 22602, a contract with a governmental agency requires additional elements that were not met by GHC in this case. Allstar also claims that any quasi-contract claims brought by GHC are time-barred and that GHC has no right to attorney fees.

## II.     LAW AND DISCUSSION

### A.     Motion To Dismiss

Allstar seeks dismissal pursuant to Guam Rule of Civil Procedure 12(b)(6), claiming that GHC has failed to state a claim on which relief can be granted. The Guam Rules of Civil Procedure provide that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." GRCP 8(a).

Guam continues to apply a liberal, notice pleading requirement for pleadings. *See Ukau v. Wang*, 2016 Guam 26 ¶ 32. Thus the Court will "consider each and every claim . . . employing the *Conley* [*v. Gibson*, 335 U.S. 41 (1957)] 'no set of facts' language." *Lujan v. J.L.H Trust*, 2016 Guam 24 ¶ 15.

## 1. Breach of Contract Claim

GHC's complaint alleges a breach of material terms from a contract existing out of the purchase order. Allstar counters by claiming no valid contract existed as the purchase order violated both the Statute of Frauds and the applicable government procurement laws, rendering void the contract and any obligations emanating from it.

First, Allstar claims that the contract violated the Statute of Frauds because the offending purchase order was not signed by the party to be charged. Mot. Dismiss at 6-7. Guam has codified the common law Statute of Frauds:

> **§ 2201. Formal Requirements; Statute of Frauds.**
>
> (1)      Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

13 GCA § 2201(1). Section 2201 is adopted from the Uniform Commercial Code of California. *See* 13 GCA Introduction (2005). Thus, California case law interpreting the Uniform Commercial Code of California is persuasive. *See, e.g., Holmes v. Territorial Land Use Comm'n*, 1998 Guam 8 ¶ 6 (finding Guam's mandamus statute was adopted from California, thus California cases are persuasive). Here, the alleged contract for computer software in the amount of $13,791.00 placed it squarely within the requirements of the Statute of Frauds.

Based on uncontroverted evidence, Allstar did not sign the purchase order as required by the Statute of Frauds. Compl., Ex. C. However, GHC argues that the Procurement Law controls the contract and does not contain the same requirement. Guam law states: "[t]he Chief Procurement Officer may approve standard form contracts or purchase orders . . . and once such approval of the standard form is given, contracts or purchase orders made on such form may be executed without the further approval of the Chief Procurement Officer." 5 GCA § 5121(c). The requirements for the procurement of small purchases are found under Title 5 of the Guam Code Annotated as well as Title 2 of the Guam Administrative Rules and Regulations ("GAR") § 3111. "Any procurement not exceeding Twenty-five Thousand Dollars ($25,000) for supplies and services . . . may be made in accordance with small purchase procedures promulgated by the Policy Office." 5 GCA § 5213. The small purchase procedures provide, "[i]nsofar as it is practical for small purchases of supplies or services between $500 and $15,000, no less than three positive written quotations from businesses shall be solicited, recorded, and placed in the procurement file. Awards shall be made to the lowest responsible and responsive bidder." 2 GAR § 3111(c)(1).

Here, GHC alleges that the procurement procedures for small purchases were followed and GHC issued requests for quotation "to several prospective vendors on Guam." Compl. at 1-2. Therefore, according to GHC, the Procurement Law controls, and the purchase order acts as a standard contract under 5 GCA § 5121(c). This Court agrees; however, this does not allow GHC to escape from its obligations to form a contract that meets the requirement of the Statute of Frauds. "Unless displaced by the particular provisions of this Chapter, the principles of law and equity, including *The Uniform Commercial Code of Guam* . . . shall supplement the

ORIGINAL

provisions of this Chapter." 5 GCA § 5002 (emphasis added). GHC has pleaded no facts that the requirement of the Statute of Frauds is displaced by the procurement laws.

However, GHC does argue that it was in possession of the software, and had paid the $13,791.00 as required under the purchase agreement. Opp'n Mot. Dismiss at 8-9 (Aug. 27, 2020). A California court found, "the contract made was not within the statute of frauds since the property bargained for was delivered into the possession of respondent and while in his possession after such delivery was fully paid for." *Savage v. Crag Lumber Co.*, 2 Cal. Rptr. 498, 449 (Ct. App. 1960). *See also Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 388 (7th Cir. 1997) (finding a fully performed oral contract between soybean seed producer and seed dealer was valid and enforceable, even if Illinois Seed Law applied and required written contract); *Wilson & Toomer Fertilizer Co. v. American Cyanamid Co.*, 33 F.2d 812, 815 (5th Cir. 1929) ("The contract in the suit had been fully performed by appellant, and therefore the action was not barred by the statute of frauds.").

GHC pleads "based on said failure, [it] has accordingly demanded the return of the full payment." Compl. at 3. GHC has alleged that full payment was tendered and it had receipt of the Program. Compl. at 3. This set of facts is sufficient to potentially support a claim of a valid contract and a subsequent breach.

Alternatively, assuming arguendo, that full performance did not occur or did not remove the contract from the statute of frauds, GHC alleges a series of communications that, when taken together, would act to satisfy the statute of frauds. "A memorandum of agreement sufficient to meet the requirements of the Statute of Frauds may be evidenced by several writings such as an exchange of letters or telegrams, or in a writing from one party to the other acted upon by the other." *Goodman v. Community Sav. & Loan Ass'n*, 54 Cal. Rptr. 456, 462 (Ct. App. 1966). *See*

ORIGINAL

*also Kelly-Clarke Co. v. Leslie*, 215 P. 699, 701 (Cal. Ct. App. 1923) (finding contract existed through signed letters incorporating the contract). The U.S. Supreme Court has also held "it is written evidence which the statute [of frauds] requires and a note or letter . . . . [will] bring a case within the provisions of the statute." *Barry v. Coombe*, 26 U.S. 640, 651 (1828).

Here, GHC alleges a series of communications regarding the contract. Compl. ¶¶ 4, 5, 8, 9. These allegations are sufficient to support a factual circumstance under which a contract existed. In order to clear the Rule 12(b)(6) standard, all GHC needs to allege is a set of facts that would entitle it to relief. It has met this burden and a contract could be evidenced through the series of communications and negotiations alleged.

Allstar next argues that GHC failed to adhere to the "statutory requirement for registration of such a contract with the Department of Administration." Mot. Dismiss at 7. Allstar cites Guam law which provides, "[a]ll contracts shall, after approval of the Attorney General, be submitted to the Governor for his signature. All contracts of whatever nature shall be executed upon the approval of the Governor." 5 GCA § 22601. Further, Guam law requires that "any contract under which payment may be made shall be submitted to the Department of Administration for filing, recording, and registration." 5 GCA § 22602. Here, the contract was not signed by the Governor nor was it submitted to the Department of Administration. These defects, according to Allstar, render the contract invalid.

However, this contract is governed by the Guam Procurement Law, which states in relevant part, "[t]he Chief Procurement Officer may approve standard form contracts or purchase orders . . . . and once such approval of the standard form is given, contracts or purchase orders made on such form may be executed without further approval . . . ." 5 GCA § 5121(c). The

comments to this section further provide, "neither the Governor nor the Attorney General sign routine purchase orders – which are contracts." 5 GCA § 5121 cmt.

Here, the contract in question was based on a routine purchase order, which was created by the Department of Administration. *See* Compl., Ex. C. Therefore, under Section 5121(c), no further approval was required by the Chief Procurement Officer and the contract did not need to be signed by the Governor or the Attorney General. Therefore, because there is sufficient evidence to support an inference that the contract had been fully performed and thus, is not barred by the statute of frauds, and was not defective for lack of the Governor's signature, the Motion to Dismiss with regards to the claims for breach of contract must be DENIED.

### 2. Breach of Warranty

As above, Allstar's Motion to Dismiss with regards to the Breach of Express Warranty, and Breach of Implied Warranty of Fitness for a Particular Purpose claims asserted by the GHC, rests on the argument that the contract is not valid due to the Statute of Frauds. This argument is dispensed with in the same manner as above. Plaintiff has alleged a set of facts sufficient to potentially establish a valid contract and thus a potential breach of warranty. Accordingly, the Motion to Dismiss as to the breach of warranty claims is DENIED.

### 3. Money Had and Spent (Unjust Enrichment)

Allstar argues that that the theory of unjust enrichment, as applied to quasi-contracts or contracts implied-in-law, is not recognized by statute in Guam. Alternatively, it argues that the "Money Had and Spent (Unjust Enrichment)" claim is time-barred by the statute of limitations.

The Court first addresses the existence of the unjust enrichment doctrine under Guam law. Guam law states that "[a] contract is either express or implied." 8 GCA § 86101. Further, "[a]n implied contract is one, the existence and terms of which are manifested by conduct." 8

ORIGINAL

GCA § 86103. The theory of unjust enrichment "is but one theory whereby a plaintiff can recover under *quantum meruit*." *Tanaguchi-Ruth & Associates v. MDI Guam Corp.*, 2005 Guam 7 ¶ 24 (citing *Alternatives Unlimited Inc. v. New Baltimore City Bd. Of Sch. Commr's*, 843 A.2d 252, 286 (Md. Ct. Spec. App. 2004)). "Quantum meruit is comprised of two distinct theories: (1) contract implied in law, also known as quasi-contract and (2) contract implied in fact." *Tanaguchi-Ruth*, 2005 Guam 7 ¶ 26 (quoting *ProMax Dev. Corp. v. Mattson*, 943 P.2d 247, 259 (Utah Ct. App. 1997)). The elements of quantum meruit "liability . . . are the performance of services by the plaintiff, the receipt of benefit of those services by defendant, and the unjustness of the defendant's retention of that benefit without compensating the plaintiff." *Tanaguchi-Ruth*, 2005 Guam 7 ¶ 27 (quoting *Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.*, 907 F.2d 732, 737 (7th Cir. 1990)).

Allstar claims that Guam does not recognize a theory of unjust enrichment recovery for quasi-contracts. However, the Guam Supreme Court has reviewed *quantum meruit* recovery under a quasi-contract theory. *Tanaguchi-Ruth*, 2005 Guam 7 ¶ 83. Further, GHC has alleged sufficient facts to purport that performance was rendered by the plaintiff in the form of money paid, that the defendant received that benefit, and that the retention of that benefit was unjust, creating a possibility of recovery under an unjust enrichment claim.

Next, Allstar argues that any claim for unjust enrichment is barred by the statute of limitations. The Supreme Court of Guam has held that "the statute of limitations will begin to run when the plaintiff suspects or should suspect that his injury was caused by wrongdoing or that someone has done something wrong to him." *Gayle v. Hemlani*, 2000 Guam 25 ¶ 24. Further, "[o]nce the plaintiff has a suspicion of wrongdoing, and therefore, an incentive to sue,

ORIGINAL

he must decide whether to file suit or to sit on his rights." *Custodio v. Boonprakong*, 1999 Guam 5 ¶ 27.

Both parties agree that the applicable limitations period is three years. Mot. Dismiss at 12; Opp'n to Mot. Dismiss at 11. Installation of the Program which did not fully perform upon delivery occurred on May 9, 2017; this action was filed on July 8, 2020, which would fall roughly 60 days outside the three-year statute of limitations. The question is therefore whether any action tolled the limitations period after installation.

GHC argues that *Pacific Rock Corp. v. Dept. of Education*, 2001 Guam 21, stands for the proposition that the statute of limitations can be tolled by ongoing negotiations, offers, counter-offers, and proposed modifications. But the claim discussed in *Pacific Rock* concerned a government contract. In contrast, under an unjust enrichment theory, a claim is based on the restitution of a benefit unjustly received and not on the terms of a contract. It is commonly understood that "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Finance Inc., v. General Elec. Finance Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). *See also Fed. Deposit Ins. Corp. v. Dintino*, 84 Cal. Rptr. 3d 38, 49 (Cal. App. 2008) ("[A] cause of action for unjust enrichment is not based on, and does not otherwise arise out of, a written contract. Rather, unjust enrichment is a common law obligation implied by law based on the equities of a particular case and not on any contractual obligation.").

Contractual remedies and administrative procedures provided for in the Procurement Law may be relevant to an analysis for the statute of limitations for contract actions, but they are misplaced in an unjust enrichment analysis. The Procurement Law makes this clear in confining the applicability of its procedures to contracts: "[t]his Section applies to controversies between

ORIGINAL

the Territory and a contractor and which arise under, or by virtue of, a *contract* between them." 5 GCA § 5427 (emphasis added). It does not appear logical to toll the accrual of the limitations period to encompass the time spent in contractual negotiations when the underlying claim is divorced from any contract.

As the Procurement Law offers no tolling relief for GHC, the Court therefore turns to whether there is any equitable reason to toll the limitations period for the unjust enrichment claim. When considering equitable tolling during a Rule 12(b)(6) motion, "the applicability of equitable tolling depends on matters outside of the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss." *Taitano v. Calvo Finance Corp.*, 2008 Guam 12 ¶ 46 (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2008)). However, a dismissal of a claim barred by the statute of limitations where equitable tolling is at issue may be supported where "some fact, evident from the face of the complaint, support[s] the conclusion that the plaintiff could not prevail, as a matter of law, on the equitable tolling issue." *Taitano*, 2008 Guam 12 ¶ 46 (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993)).

Here, GHC admits that the Program failed to work after its installation on May 9, 2017. Compl. ¶ 11. GHC had more than mere suspicion as required by the equitable tolling doctrine, but rather, had full knowledge of the breach at that point. Further, GHC has not alleged any facts supporting fraud or deception which would allow this Court to consider equitable tolling. Accordingly, the Motion to Dismiss as to the unjust enrichment claims is GRANTED due to a time bar.

### 4. Attorney's Fees

GHC has demanded attorney fees in their complaint but cited no direct authority as to its entitlement. Compl. at 6. It cites 5 GCA §§ 5425 and 5427. Opp'n Mot. Dismiss at 13. None of





these statutes concern the case at bar or mention attorney fees. Section 5425 concerns official protests filed to the bidding process and has no bearing on the case before us. Further, even if it did apply, the statute specifically excludes attorney fees stating, "when a protest is sustained, the protestant shall be entitled to the reasonable costs incurred in connection with the solicitation and protest, including bid preparation costs, excluding attorney's fees." 5 GCA § 5425(h). Section 5427 concerns the authority to resolve breach of contract controversies and does not mention attorney fees.

Guam follows the American Rule, and "[u]nder the American Rule, attorney's fees are not allowed unless authorized by contract or statute." *Fleming v. Quigley*, 2003 Guam 4 ¶ 7. Here, GHC has not alleged any facts which would take the case at bar outside of the American Rule, and therefore, the Motion to Dismiss with respect to Attorney's Fees is GRANTED.

**B.     Motion for Summary Judgment**

Allstar asks the Court to analyze the same issues under summary judgment standards in the event its Motion to Dismiss falls short. Mot. Dismiss at 6. Summary judgment is appropriate if the pleadings, depositions, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that, taken in the light most favorable to the non-movant, the moving party is entitled to judgment as a matter of law. GRCP 56(c). *See Izuka Corp. v. Kawasho International, (Guam), Inc.,* 1997 Guam 19 ¶¶ 7, 8. A genuine issue of material fact exists "if there is 'sufficient evidence' which established a factual dispute requiring resolution by the fact-finder." *Fajardo ex rel. Fajardo v. Liberty House Guam* 2000 Guam 4 ¶ 5 (quoting *Izuka Corp.,* 1997 Guam 19 ¶ 7.). A material fact is "one that is relevant to an element of a claim or defense and whose existence might affect the outcome of a suit." *Id.*



The Court discusses above that GHC has adequately alleged that a contractual relationship formed between GHC and Allstar. Whether GHC breached that contract or any warranty remains an issue of fact. Summary judgment is therefore not appropriate at this stage.

## III.    CONCLUSION

Based on the foregoing, Allstar's Motion to Dismiss is GRANTED with respect to the claims of unjust enrichment and attorney fees, and DENIED as to the rest.

SO ORDERED this 17th day of October 2020.

_____
**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

Appearing Attorneys:
Gary Wayne Francis Gumataotao, Esq. for Defendant
Cynthia V. Ecube, Esq. for Plaintiff

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:

_____

Date:_____ Time:_____

_____
Deputy Clerk, Superior Court of Guam